IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JEFFERY A. MAYS,** ) | |
| **Administrator for the Estate of** ) | |
| **DAVID WAYNE MAYS, deceased,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 7:18cv102-GEC |
| ) | |
| **RONALD N. SPRINKLE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Jeffery Mays, Administrator for the Estate of David Wayne Mays, by counsel, states as follows in opposition to Defendants' Motion to Dismiss ECF No. 23:

**I.    Introduction.**

On July 25, 2016, David Mays was arrested for public intoxication. Am. Compl. ¶ 16. On this day Mr. Mays was able to communicate with the Officers regarding the prescription medication he had taken and was able to depart from custody "under his own power".[1] Id. On July 26, 2016, at a parking area, David Wayne Mays was found extremely intoxicated by his Mother, and she believed that he had ingested alcohol and prescription medication. Id. ¶ 20. As

---

[1] Defendants state that Mr. Mays was released the following morning after his first arrest. Defs.' Mem. in Supp at 2, ECF No. 30, Mar. 23, 2018. The Complaint states only that Mr. Mays was "released on his own recognizance, as he was sober enough to leave on his own power." Am. Compl. ¶16. As such Defendants' allegation should be treated as a fact outside of the pleading and disregarded. Furthermore, this statement is misleading. According to Plaintiff's records Mr. Mays was brought to the magistrate at 11:54 p.m. on the 25th and released at 12:29 a.m. on the 26th. He was never held over as this statement seems to imply. Even more troubling is Defendants claim that Mr. Mays spent the night in jail on the 25th. Defs. Mem. at 6. This allegation is absent from the Complaint, and evidence of such is absent from any of the records in Plaintiff's possession.

a result, the decedent's Mother dialed 911 for medical assistance. Id. During what turned into a fatal encounter, the Botetourt County Deputies were aware that Mr. Mays was too intoxicated to communicate, there was a suspicion of a mixture of prescription medication with alcohol, and the deputies knew that 90 pills were missing from a prescription that Mr. Mays was prescribed several days prior. Id. ¶¶ 16-35. All of the available information made the Officers aware that the situation was significantly more serious than the night before. Instead of calling for medical assistance, the decedent was taken to the Botetourt County Jail where he was thrown into a cell without receiving even a cursory medical evaluation, as required by statute. Id. ¶¶ 20, 35, 36, 58, 59. After Mr. Mays was placed in the cell, he was only superficially checked by guards peering through a thick glass window.[2] Id. at ¶ 37. As can be seen from the video stills embedded in the Complaint, the superficial check was insufficient to determine whether Mr. Mays was breathing. In fact, the video reveals it finally took the Deputy looking in the window for over a minute and then actually going into to the cell to determine the medical status of the Defendant. Id. ¶¶ 38-46. By then it was too late, and Mr. Mays was pronounced dead at the hospital the following day.

**II.    Standard Governing Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir. 2006). Pursuant to Fed. R. of Civ. P. 8(a)(2) Plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff does not need to provide "detailed factual allegations." Aschcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In order to avoid having her

---

[2] Plaintiff does not have knowledge regarding any security checks prior to 3:00 am.

claim dismissed, Plaintiff's complaint must allege facts sufficient to make the claim for relief "plausible on its face." Id. at 678 (citing Twombly, 550 U.S. at 570). Plaintiff has met this burden when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When deciding whether to dismiss this claim, the Court should accept as true all of the facts alleged in the Complaint, and draw all reasonable inferences in the Plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (citing Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). Additionally, when a plaintiff brings a civil rights claim, the court should be "especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Id. at 244 (4th Cir. 1999) (internal quotations omitted) (citing Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988)).

**III. ARGUMENT.**

**A. Plaintiff's Negligence Allegations are Sufficient to Withstand a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, as Virginia Law Required Mr. Mays to be Medically Assessed, and, as such, Providing Such Assessment was a Ministerial Act.**

Defendants argue that each and every one of them are entitled to sovereign immunity as a matter of law simply because assessing the need for medical attention requires judgment and discretion. Defs.' Mem. in Supp. at 4, ECF No. 24. This is an oversimplification of the analysis that the Court must make as to each Defendant in this matter. "Whether a matter is truly committed to the discretion of a government employee is therefore a question of degree and requires an analysis of the circumstances of a particular situation." Jennings v. Hart, 602 F. Supp. 2d 754, 759 (W.D. Va. 2009). In other words, a factual determination.

In this case, Virginia law required that all inmates be medically assessed upon admission into jail and that 24 hour care be available. See Am. Compl. ¶ 58 (citing 6 Va. Admin. Code § 15-40-360, 370) ("Written policy, procedure, and practice **shall** provide that receiving and medical screening be performed on all inmates upon admission to the facility.") (emphasis added)). While a medical assessment may involve judgment and discretion, the provision of such an assessment in this case is a ministerial action if the regulation controls. Id. Plaintiff has alleged that no such screening was performed. Therefore, Plaintiff's negligence claims should go forward.

Defendants also claim that Sheriff Sprinkle is not strictly liable for the acts of his deputies, on the basis that he is a municipal employer, i.e., a municipality. Defs.' Mem. in Supp. at 4, ECF No. 24 (citing Niese v. City of Alexandria, 264 Va. 230, 238 (2002)).[3] Therefore, Defendants posit that the Sheriff is also entitled to sovereign immunity. Case law is replete, however, with analysis uniformly concluding that a sheriff does not operate under the authority of a local governing body and is a legally distinct entity from the same. United States v. Gregory, No. 93-1391, 1994 U.S. App. LEXIS 14443, at *12 (4th Cir. June 8, 1994) ("Virginia courts have consistently interpreted this constitutional provision as rendering Virginia sheriffs independent 'constitutional' officers, who are beholden neither to local governing bodies, nor to the Commonwealth, but rather only to the voters who elected them."); Briggs v. Waters, No. 2:06-cv-154, 2006 U.S. Dist. LEXIS 44048, at *8-9 (E.D. Va. June 27, 2006) (concluding that a sheriff and sheriff employees are legally distinct from the city in which they operate); Brown v. Mitchell, 308 F. Supp. 2d 682, 698 (E.D. Va. 2004) (recognizing that the City of Richmond Sheriff is a completely different entity than the City's local governing body).

---

[3]Defendant Sprinkle also argues that Sheriff is not a municipality but instead an arm of the State for Eleventh Amendment purposes.

Moreover, Plaintiff has alleged both vicarious and strict liability against Sheriff Sprinkle for his deputies' acts. Am. Compl. ¶¶ 59, 67. The difference between the two is subtle yet important. If the deputies were acting in the course and scope of their employment and their acts are ministerial in nature, the Sheriff is responsible under the doctrine of respondeat superior. First Va. Bank-Colonial v. Baker, 225 Va. 72, 81, 301 S.E.2d 8, 13 (1983). If, on the other hand, the deputies actions were taken *colore officii* then the Sheriff is strictly liable for those actions and sovereign immunity does not apply. Westmoreland v. Brown, 883 F. Supp. 67, 79 (E.D. Va. 1995). Either way, at this stage of the litigation Defendants cannot meet their burden, taking Plaintiff's allegations as true and resolving all inferences in his favor, to show that they are entitled to sovereign immunity for acts of simple negligence. As Plaintiff's allegations are sufficient to maintain an action for simple negligence at this stage of the litigation, Defendants' Motion to Dismiss Plaintiff's simple negligence claims should be denied.

**B. Mr. Mays' Extreme Prescription Drug Intoxication Taken Together with the Attendant Circumstances Created an Objectively Serious Medical Need.**

Defendants argue that the decedent's level of prescription drug intoxication on the evening of the 26th was not a serious medical need that was obvious to a lay person. Defs.' Mem. at 5-6. Defendants' arguments must fail at this stage as Plaintiff has alleged that Mr. Mays' acute prescription medication intoxication was a serious medical need that Defendants were aware of. Am. Compl. at 74, 75. Defendants claim that on the evening prior to Mr. Mays' demise Mr. Mays "exhibited nearly identical behavior, spent the night in jail and then was released (safely) on his own recognizance." Defs.' Mem. at 6. Despite this allegation's factual inaccuracy and absence from the complaint (see supra at fn 1) there are other facts that inform the analysis of whether Mr. Mays' medical need was obvious enough that a lay person would recognize the need for a doctor's intervention. Namely, there was a concern of alcohol and

5

medication mixture which everyone knows can be dangerous, and can lead to death. Mr. Mays' medication was confiscated during the second arrest and 90 Wellbutrin pills were found missing from a prescription that he had filled 3 days prior. Despite Defendants' attempts to use Mr. Mays arrest on the night before as evidence of lack of notice of a serious medical condition, the prior arrest actually provides the Defendants with notice that Mr. Mays has a history of prescription medication abuse -- a fact that should have given further notice that medical treatment was necessary. Any lay person should recognize that a person who was missing 90 pills from one prescription, had possibly ingested alcohol with those pills, and had a history of medication abuse was in need of medical attention, and that the failure to do so could lead to serious injury or death. Am. Compl. at ¶ 36. "Indeed, a medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain." Boren v. Nw. Reg'l Jail Auth., Civil Action No. 5:13cv013, 2013 U.S. Dist. LEXIS 140169, at *25-26 (W.D. Va. Sep. 30, 2013) (quoting Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986)).

Defendants also point out that Mr. Mays "was checked on in his cell around 3:00 a.m." Defs.' Mem. at 6. What should be clear from the Complaint, absent Plaintiff's counsels unartful pleading, is that merely peering at Mr. Mays through the glass is insufficient to determine whether Mr. Mays was breathing properly. This fact is evidenced and can be inferred from the lengthy evaluation that was undertaken at 3:24 am before medical help was eventually called. Am. Compl. 39-48. There should be no question that Mr. Mays' level of intoxication and the surrounding circumstances as noted above are sufficient to **plead** a serious medical need. See e.g., Wade ex rel. Wade v. Carter, Civil Action No. 2:13CV00026, 2014 U.S. Dist. LEXIS

90940, at *17 (W.D. Va. July 2, 2014) (citing Navolio v. Lawrence Cnty., 406 F. App'x 619, 622 (3d Cir. 2011) (assuming that the chemical withdrawal a pretrial detainee experienced was a serious medical need) (citing cases); see also, Thornhill v. Aylor; Civil Action No. 3:15CV00024, 2017 U.S. Dist. LEXIS 172076, at *33 (W.D. Va. Oct. 18, 2017)  (citing M.H. v. Cty. of Alameda, 62 F. Supp. 3d 1049, 1077 (N.D. Cal. 2014) (explaining that the "failure to medically screen new inmates may constitute deliberate indifference to medical needs" when the medical professional knows that an inmate has a history of alcohol abuse); see also Boren v. Nw. Reg'l Jail Auth., Civil Action No. 5:13cv013, 2013 U.S. Dist. LEXIS 140169, at *26-27 (W.D. Va. Sep. 30, 2013) (finding alcohol withdrawal a serious medical need).

**C. Defendants are Not Entitled To Qualified Immunity on the Allegations in Plaintiff's Complaint.**

Defendants seek qualified immunity on essentially the same basis that they claimed the Complaint failed to state a cause of action, that Mr. Mays exhibited the same behavior the night before.  Defendants' argument is deficient for the same reasons stated above. (see supra at 5-6) "The question [of qualified immunity] is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Clem v. Corbeau, 284 F.3d 543, 553 (4th Cir. 2002) (citations and internal quotation marks omitted).  "Accordingly, a constitutional right is clearly established for qualified immunity purposes not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked." Sims v. Labowitz, 885 F.3d 254, 263 (4th Cir. 2018) (citations and internal quotation marks omitted).  The core principle in this case is an objectively serious medical need.  Despite Defendants claim that Mr. Mays' symptoms were not "apparently life threatening" (Defs.' Mem at 8) Plaintiff has alleged that Mr. Mays had a life threatening and serious medical need and Defendants were deliberately indifferent to the same.  Am. Compl. at

7

74, 75.[4]   That Defendants dispute the facts as alleged does not entitle them to qualified immunity, especially under the 12(b)(6) standard.

"[T]he qualified immunity question can be difficult for a court to resolve as a matter of law, as it can at times require factual determinations respecting disputed aspects of [a defendant's] conduct."  Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003) (citations and internal quotation marks omitted).  As Defendants have based their qualified immunity defense on the factual determination that Mr. Mays' symptoms "were not apparently life threatening" and the disputed comparison of Mr. Mays' behavior and conduct from the night before, the Court must deny Defendants' Motion for Qualified Immunity at this stage of the litigation.

Furthermore, qualified immunity does not "protect the plainly incompetent or those who knowingly violate the law.'" Henry v. Purnell, 652 F.3d 524, 534 (4th Cir. 2011) (citing Hunter v. Bryant, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).  A reasonable fact finder could come to the conclusion that it was plainly incompetent to fail to provide a medical screening to a person who was suspected of mixing alcohol with 90 prescription pills.

### D.  None of the Defendants Are Sued In Their Offical Capacities; as Such, There is No Eleventh Amendment Immunity and Count III Should Go Forward.

None of the claims against the Sheriff or his employees are official capacity claims and therefore, no Eleventh Amendment immunity applies to Defendant Sprinkle or his employees. See Am. Compl. ¶¶ 8, 9.  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the **entity's** policy or custom must have played a

---

[4] Plaintiff takes exception to Defendants seeking to make the factual determination that Plaintiff's symptoms "were not apparently life threatening" despite it being plainly alleged in the Amended Complaint.  At best, this is a factual dispute that should be resolved by a fact finder, not the Defendants.

8

part in the violation of federal law." Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361-62 (1991) (citations internal quotation marks omitted) (emphasis added).  In this case, there are no allegations that Virginia's policies led to the deprivation of Mr. Mays' rights but instead it was a course of action chosen by one of the three Defendants listed in Count III.  This was a course of action in derogation to Virginia policy.  "[T]he Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983." Hafer v. Melo, 502 U.S. 21, 30-31, 112 S. Ct. 358, 363 (1991).

### E.  The Complaint Sufficiently States Claims Against Parker and Dudding Under Counts I and III.

Defendants argue that Plaintiff's state law claims against Defendants Dudding and Parker for failure to implement policies consistent with their statutory and regulatory duties are barred by the private rules doctrine.  Defs.' Mem. at 10.  This line of case law is inapposite as the duties set forth by the regulations compelled the Defendants to act.  "A person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common." Va. R. & P. Co. v. Godsey, 117 Va. 167, 168, 83 S.E. 1072, 1073 (1915).  In this case the standard of care was fixed by regulation, and it was grossly negligent to implement a policy that disregarded it.  See Am. Compl. at 64-71.

Defendants also argue that both Counts I and III fail because it is "facially impossible" that three separate defendants could have final policy making authority.  Defs.' Mem. at 10.  The Federal Rules of Civil Procedure allow alternative pleading.  "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P.  8(d)(2). Notwithstanding the rules, the Fourth Circuit holds that it is actually possible that more than one entity can have final policy making authority:

> [A] municipal agency or official may have final authority to make and implement policy despite a municipality's retention of powers of ultimate control over both policy and policymaker. The question is one of authority-in-fact. A municipal governing body may not avoid attribution of policy to itself simply by officially retaining unexercised ultimate authority to countermand a policy or to discipline or discharge the policymaker.

Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) (citations omitted). Under either alternative pleading, or Fourth Circuit Authority, it is clear that the allegation that "Defendants Sprinkle, Dudding and/or Parker were given final policy making authority" is sufficient to withstand a 12(b)(6) motion to dismiss. Am. Compl. at ¶ 81.

### F. Plaintiff Does Not Seek State Law Punitive Damages Under Respondeat Superior.

Plaintiff concedes that he will not seek punitive damages for respondeat superior claims, or for strict liability claims against Defendant Sprinkle. However, Plaintiff reserves the right to seek punitive damages to the extent that Plaintiff is able to show that Defendants Sprinkle, Dudding or Parker willfully and wantonly disregarded their duties to provide medical assessment and treatment to Mr. Mays and were deliberately indifferent.

### G. Virginia Code § 8.01-38.1 Does Not Require a Plaintiff to Seek Any Specific Amount of Punitive Damages in an Ad Damnum.

Defendant is correct that Virginia Code § 8.01-38.1 limits the recovery of punitive damages on state law claims to $350,000.00. The statute, however, actually forbids the jury from hearing about the cap. "The jury shall not be advised of the limitation prescribed by this section." Va. Code Ann. § 8.01-38.1. "[W]hile Virginia Code § 8.01-38.1 places a $350,000 statutory cap on punitive damages, by the clear language of the statute, the cap pertains to the amount of punitive damages that may recovered by a successful party, not the amount that may be sought in the complaint and to which a jury may find a defendant liable." Fid. Nat'l Title Ins. Co. v. Wash. Settlement Grp., LLC, 87 Va. Cir. 77, 95 (Fairfax County Cir. Ct. 2013).

## IV. Conclusion.

Plaintiff has satisfied the technical pleading requirements for all of the claims against all of the Defendants. Plaintiff has, therefore, stated plausible, non-speculative claims for relief against Defendants in the Amended Complaint and Defendants are on notice of these claims. Plaintiff respectfully requests that Defendants' Motion be denied in its entirety.

Date: June 6, 2018

Respectfully submitted,

JEFFERY A. MAYS, Administrator for the Estate of DAVID WAYNE MAYS, deceased

By: _____/s/_____
                Counsel

Jonathan E. Halperin – VSB No. 32698
Andrew Lucchetti – VSB No. 86631
Halperin Law Center, LLC
5225 Hickory Park Drive, Suite B
Glen Allen, VA 23059
(804) 527-0100 Telephone
(866) 335-1502 Facsimile
jonathan@halperinlegal.com
andrew@halperinlegal.com

and

Paul R. Thomson, III – VSB No. 38765
The Thomson Law Firm, PLLC
2721 Brambleton Avenue, S.W.
Roanoke, VA 24015
(540) 777-4900 Telephone
(540) 772-0578 Facsimile
paul@roanokeinjurylawyer.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this 6th day of June, 2018, I electronically filed the foregoing Memorandum in Opposition to Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jim H. Guynn, Jr., Esquire
Christopher S. Dadak, Esquire
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, Virginia 24153
Telephone: (540) 387-2320
Facsimile: (540) 389-2350
jimg@guynnwaddell.com
christopherd@guynnwaddell.com
*Counsel for Defendants*

                                                                                                                                        /s/
                                                  Counsel
Jonathan E. Halperin, Esquire
Andrew Lucchetti, Esquire
Halperin Law Center, LLC
5225 Hickory Park Drive, Suite B
Glen Allen, VA 23059
(804) 527-0100 Telephone
(866) 335-1502 Facsimile
jonathan@halperinlegal.com
andrew@halperinlegal.com
*Counsel for Plaintiff*