CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 16 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JEFFREY A. MAYS,  )
Administrator for the Estate of  )
DAVID WAYNE MAYS, deceased,  )  Civil Action No. 7:18CV00102
  )
    Plaintiff,  )  **MEMORANDUM OPINION**
  )
v.  )  By: Hon. Glen E. Conrad
  )  Senior United States District Judge
RONALD N. SPRINKLE, et al.,  )
  )
    Defendants.  )

David Wayne Mays ("David") died at Carilion Roanoke Memorial Hospital on July 28, 2016, after being arrested in Botetourt County. Jeffrey Mays, David's brother and the administrator of his estate, subsequently filed this action against the Sheriff of Botetourt County, Ronald Sprinkle, and eight of the Sheriff's officers, asserting claims under 42 U.S.C. § 1983 and Virginia law. The case is presently before the court on the defendants' motion to dismiss. For the following reasons, the plaintiff's claims under § 1983 will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will decline to exercise supplemental jurisdiction over the state tort claims.

## Background

The following factual allegations, taken from the plaintiff's amended complaint, are accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

On July 25, 2016, one of Sheriff Sprinkle's deputies found David asleep and slumped over the steering wheel of a parked vehicle. Am. Compl. ¶ 16, Dkt. No. 25. The deputy observed a bag of prescription medication next to David. Id. David eventually awoke and advised the deputy that he had taken gabapentin and alprazolam.[1] Id. The deputy noted that David's speech was slurred, that his eyes were bloodshot, and that he had difficulty standing up and staying awake. Id. David was charged with profane swearing and public intoxication. Id. He was ultimately "released on his own recognizance, as he was sober enough to leave under his own power." Id. David did not undergo any form of medical evaluation and his prescription medication was not confiscated. Id.

The next day, David's mother called 911 and requested medical assistance. Id. ¶ 20. She advised the dispatcher that David "had consumed alcohol and prescription narcotics," that he was "extremely intoxicated," and that she needed help removing him from a vehicle. Id. Deputy Daniel Faulkner arrived on the scene to find David sitting in the cab of his truck. Id. ¶ 21. The plaintiff alleges that David was "so intoxicated he could hardly lift his head to communicate." Id. David's eyes were bloodshot, his speech was mumbled and slurred, and his gait was unsteady upon exiting the truck. Id. He subsequently "lay himself down in the bed of the pickup truck despite it being full of water." Id. ¶ 25. Deputy Joshua Golla "was present at the rear of the truck and witnessed [David's] level of intoxication and the surrounding circumstances." Id. ¶ 22.

David was once again arrested for public intoxication. Id. ¶ 19. At some point during the arrest, Faulkner noticed "a bag full of multiple prescription narcotics to the right of where [David] was seated." Id. ¶ 23 (internal quotation marks omitted). The bag contained a bottle of gabapentin capsules which had been prescribed on July 23, 2016, and a bottle of citalopram

---

[1] According to the amended complaint, gabapentin is prescribed for the treatment of epilepsy and neuropathic pain. Am. Compl. ¶ 17. Alprazolam (known commercially as Xanax) is a controlled substance used to treat anxiety. Id. ¶ 18.

capsules which had been prescribed on July 7, 2016.[2]  Id.  The plaintiff alleges that 91 capsules of gabapentin and all 30 capsules of citalopram were unaccounted for.  Id.

While on the scene, Faulkner spoke with an attorney with the Commonwealth's Attorney's Office in Botetourt County regarding potential charges.  Id. ¶ 26.  Faulkner informed the attorney about David's "level of intoxication, the fact that he had lain down in standing water, and the fact that narcotics and alcohol were involved."  Id.

Sergeant Steven Honaker arrived on the scene and assisted Faulkner with placing David in a patrol vehicle.  Id. ¶ 27.  Faulkner then took David to see a magistrate.  Id. ¶ 28.  While en route, David "passed out and began to snore."  Id.  Upon arriving at the magistrate's office, Deputy Faulkner had to call out to David several times in order to awaken him.  Id. ¶ 29.  The deputy also had to help David step out of the vehicle.  Id.

The plaintiff alleges that Deputy Michael Prillaman and Lieutenant Travis Belcher came upon the scene and witnessed David's level of intoxication.  Id. ¶¶ 30–31.  Prillaman assisted Faulkner with "walking [David] into the docket."  Id. ¶ 30.  Because David "was unable to sit upright on the bench due to impairment," Belcher advised him to sit at the end of the bench and lean against the wall.  Id. ¶ 32.

The magistrate ultimately "ordered that [David] be held until sober."  Id. ¶ 33.  At approximately midnight, Sergeant Brandon Byers helped Belcher place David in a cell at the Botetourt County Jail.  Id. ¶ 34–35.  David required assistance removing his shoes and eyeglasses.  Id. ¶ 35.  He did not receive any form of medical evaluation prior to being placed in the cell, and none of the defendants requested emergency medical assistance at that time.  Id. ¶ 36.

At 3:00 a.m., Belcher and Prillaman performed a security check by looking through the glass window of David's cell, through which David could be seen lying on a sleeping mat on the

---

[2] Citalopram is an "antidepressant drug."  Am. Compl. ¶ 24.

floor. Id. ¶ 38. Roughly twenty minutes later, Byers performed another security check in the same manner. Id. ¶ 39. Approximately two minutes later, after leaning closer to the window to obtain a better view, Byers asked another officer to open David's cell. Id. ¶¶ 39–43. He then entered the cell and stood next to David for approximately 10 seconds. Id. ¶ 44. Byers then prodded David's leg and realized that he was unresponsive. Id. ¶ 45.

Byers attempted to wake David by shaking the sleeping mat. Id. ¶ 46. When that proved unsuccessful, he asked another deputy to retrieve an ammonia packet. Id. He then attempted to check David's pulse. Id. ¶ 47.

Deputies began performing cardiopulmonary resuscitation ("CPR") at approximately 3:24 a.m. Id. ¶ 48. They continued performing CPR for ten minutes until an emergency medical services ("EMS") unit arrived at the jail. Id. ¶ 48. The EMS unit transported David to Carilion Roanoke Memorial Hospital, where an electroencephalogram ("EEG") showed no signs of brain activity. Id. ¶ 49–50. David was pronounced dead on July 28, 2016 at 12:59 p.m. Id. ¶ 51. "The cause of death was acute hydrocodone, gabapentin, citalopram, and alprazolam intoxication." Id.

## Procedural History

The plaintiff filed this action against Sprinkle, Faulkner, Golla, Honaker, Prillaman, Belcher, Byers, Delbert Dudding,[3] and Kenny Parker[4] on March 7, 2018. On May 4, 2018, the plaintiff filed an amended complaint. In Count I of the amended complaint, the plaintiff asserts a wrongful death claim against all nine defendants under Virginia Code § 8.01-50, based on theories of negligence, gross negligence, and willful and wanton negligence. In Counts II and III, the

---

[3] Dudding "is and was at all relevant times herein . . . the commander of the corrections division." Am. Compl. ¶ 9.

4 Parker "is and was at all relevant times herein . . . the Chief Correctional Officer." Am. Compl. ¶ 9.

4

plaintiff asserts claims for damages under 42 U.S.C. § 1983 for alleged violations of David's rights under the Eighth and/or Fourteenth Amendments to the Constitution of the United States.

The defendants have moved to dismiss the amended complaint under Rule 12(b)(6). The court held a hearing on the motion via conference call on August 7, 2018. The motion has been fully briefed and is ripe for disposition.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

### I. Claims under § 1983

The court will first address the plaintiff's claims under § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. In Count II, the plaintiff claims that Faulkner, Golla, Honaker, Belcher, Prillaman, and Byers violated David's constitutional rights by acting with deliberate indifference to a serious medical need. In Count

III, the plaintiff claims that Sprinkle, Dudding, and/or Parker "created a policy of deliberate indifference by allowing inmates and detainees to be admitted into the [Botetourt County Jail] without proper medical screening." Am. Compl. ¶ 83.

### A. Count II

In moving to dismiss Count II, the defendants argue that the amended complaint fails to state a claim for deliberate indifference, and that the defendants named in Count II are entitled to qualified immunity. For the following reasons, the court agrees.

#### 1. Deliberate Indifference

The Eighth Amendment prohibits correctional officials from inflicting cruel and unusual punishment by acting with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). This principle also applies to pretrial detainees, like David, through the Fourteenth Amendment's Due Process Clause. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). Because "[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner," the United States Court of Appeals for the Fourth Circuit "ha[s] held that a pretrial detainee makes out a due process violation if he shows 'deliberate indifference to serious medical needs' within the meaning of Estelle v. Gamble." Id.; see also Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2011) ("In any case, we need not resolve whether Brown was a pretrial detainee or a convicted prisoner because the standard in either case is the same--that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.'") (quoting Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990)) (alteration in original).

A claim for deliberate indifference has two components. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The first, "objective" component is satisfied by a "serious" medical need. Id. A medical condition is serious when it has "been diagnosed by a physician as

6

mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks omitted). The second component requires plaintiffs to show that officials acted with a "'sufficiently culpable state of mind.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Under existing precedent, "[a]n official is deliberately indifferent to a [detainee's] serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Jackson, 775 F.3d at 178 (quoting Farmer, 511 U.S. at 837). "Stated somewhat differently, deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care." Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (internal quotation marks omitted) (emphasis in original). Notably, this is "a higher standard for culpability than mere negligence or even civil recklessness." Jackson, 775 F.3d at 178. To establish a constitutional violation, "it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the [detainee's] serious medical condition and the excessive risk posed by the official's action or inaction."[5] Id. (emphasis in original).

Applying these principles, the court is unable to conclude that the amended complaint states a plausible claim of deliberate indifference against any of the defendants named in Count II. While David's death is undeniably tragic, his alleged symptoms are similar to those in a number of

---

[5] The court notes that neither side suggests that the Supreme Court's decision in Kingsley v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466 (2015) eliminated the subjective component of a claim for deliberate indifference brought by a pretrial detainee. In Kingsley, the Supreme Court held "that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." 135 S. Ct. at 2473. However, Kingsley did not involve a claim of deliberate indifference to a serious medical need, and neither the Supreme Court nor the Fourth Circuit has extended its holding to other claims. Accordingly, the court will apply the subjective standard of deliberate indifference set forth above. See, e.g., Johnson v. Bessemer, No. 17-13122, 2018 U.S. App. LEXIS 18660, at *9, n.5 (11th Cir. July 10, 2018) (noting that Kingsley involved an excessive force claim and did not undermine existing circuit precedent applicable to claims of deliberate indifference to a serious medical need); see also Wilson v. Jacobs, No. 0:14-4006, 2016 U.S. Dist. LEXIS 21243, at *7 n.4 (D.S.C. Jan. 22, 2016), report and recommendation adopted, 2016 U.S. Dist. LEXIS 20813 (D.S.C. Feb. 22, 2016) ("Because the decision in Kingsley addressed only claims of excessive force, this court continues to abide by precedent established by the United States Court of Appeals for the Fourth Circuit, which has set forth a subjective standard when addressing a pretrial detainee's claims of deliberate indifference to a serious medical need.").

other cases in which courts, including the Fourth Circuit, have rejected claims of deliberate indifference. For instance, in Grayson v. Peed, a county police officer arrived at the scene of a shopping mall where the decedent, Gerald Collins, was "acting crazy." 195 F.3d at 694. He resisted being handcuffed and the officer had to use a special immobilization technique to restrain him. Id. After searching Collins' backpack, the officer found film canisters containing marijuana and a substance believed to be PCP. Id. The officer placed Collins under arrest and transported him to a detention facility. Id. During the booking process, Collins "act[ed] irrationally, his speech was slurred, and he kept repeating in an intoxicated manner." Id. Collins then proceeded to act "belligerently" and "violently" on several occasions, and he was "punched seven to nine times" in the process of subduing him. Id. After being restrained in a cell at the detention facility, Collins became unconscious and eventually died. Id.

In a subsequent § 1983 action against the arresting officer, Collins' mother claimed that the officer's decision to transport him to a detention facility instead of a hospital constituted deliberate indifference. Id. at 695. The Fourth Circuit disagreed, concluding that there was no objective evidence available to the officer at the time of the incident that Collins had a serious need for medical care. Id. The court emphasized that, at the time of their encounter, Collins exhibited "no visible external injuries." Id. "He did not have trouble breathing. He was not bleeding, was not vomiting or choking, and was not having a seizure." Id. In concluding that the evidence did not support a claim of deliberate indifference, the Fourth Circuit reasoned that Collins' symptoms of drug use did not "distinguish him from the multitude of drug and alcohol abusers the police deal with everyday," and that the officer could "hardly be faulted under Estelle for believing that Collins needed nothing so much as to sleep it off." Id. at 696. The Court emphasized that "[t]o accept appellant's claim would be to mandate as a matter of constitutional law that officers

take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers," which it determined "would be a startling step to take." Id.

Similarly, in Burnette v. Taylor, 533 F.3d 1325 (11th Cir. 2008), the Eleventh Circuit found no constitutional violation under circumstances similar to those in the instant case. 533 F.3d at 1332–33. In Burnette, a detainee died of a drug overdose while in custody. Id. at 1327. The detainee was arrested after his stepfather reported that he had broken into the stepfather's house and stolen prescription Duragesic patches used to treat chronic pain.[6] Id. The detainee's stepfather also advised a deputy that the detainee was "'strung out' on pills and other drugs," and that he "had been in detox or drug treatment in the past and that it had not worked." Id. at 1328. At the time of his arrest, the detainee "had glassy eyes and dilated pupils," his "responses to questions were slow," and he "was in possession of a bottle of prescription pills." Id. It was readily apparent to one of the deputies that the detainee "was under the influence of something." Id. After he was taken to the local jail, a prescription pill bottle was found in the detainee's underwear and he was observed staggering by one of the jailers. Id. Another jailer noticed that the detainee's speech was slurred. Id. at 1329. There was also evidence that the detainee "was not able to walk on his own," and that one of the jailers asked his cellmate to make sure that he was able to get to a bed without falling. Id. The detainee was found dead the following morning. Id. "The cause of death was polypharmacy: different drugs in combination. The drugs involved were Alprazolam, Hydrocodone, Benzolecgonine, and Fentanyl." Id. at 1130–31.

The detainee's father filed suit against several deputies and jailers under § 1983. On appeal from the district court's decision denying qualified immunity, the Eleventh Circuit held that the plaintiff "failed to establish a violation of [the detainee's] Fourteenth Amendment rights. Id.

---

[6] "Duragesic is a brand name for a fentanyl skin patch . . . . It is not meant to be ingested orally nor injected under the skin, but sometimes is by those who are abusing the drug." Krieger v. United States, 842 F.3d 490, 492 (7th Cir. 2016); see also Burnette, 533 F.3d at 1331 n.3.

9

at 1327. Citing several cases from other circuits, the Court emphasized that "'[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." Id. at 1333. Based on the record before it, the Court concluded none of the defendants acted with deliberate indifference to a serious medical need that was obvious or known to him. Id. at 1332.

Upon review of the amended complaint, the court sees very little difference in the alleged interactions between David and the defendants named in Count II, and the encounters described in Grayson and Burnette. The plaintiff does not allege that David had any external injuries, that he was breathing abnormally before being placed in a cell, or that he was vomiting or choking. See Grayson, 195 F.3d at 695. Although David exhibited signs of intoxication by climbing in the back of his wet truck, staggering, and slurring his words, such symptoms do not "distinguish him from the multitude of drug and alcohol abusers the police deal with everyday." Id. at 696 (emphasizing that the decedent "was found in possession of drugs while acting irrationally and slurring his speech"). Nor does the fact that David's eyes were bloodshot or that he was unable to exit the patrol car on his own. See Burnette, 533 F.3d at 1332 (noting that one of the defendants was aware that the decedent was in possession of a bottle of pills when he was arrested, that his speech was slurred, that he needed assistance when he moved, and that his eyes were rolling back in his head at that time); see also Letson v. Mitchell, No. 3:13-cv-00168, 2015 U.S. Dist. LEXIS 39885, at *20 (N.D. Ala. Mar. 30, 2015) ("According to the amended complaint, when Deputy Frye arrested Dan Letson on October 11, 2011, Dan Letson was so intoxicated that he had to be carried to the officers' vehicle. Although these allegations provide detail regarding the degree to which Dan Letson was intoxicated when he was arrested . . . , they fall short of demonstrating Deputy Frye or Deputy Flannagin knew Dan Letson had a serious medical need that required medical attention at those times.").

In response to the defendants' motion, the plaintiff emphasizes that Faulkner noticed "a bag full of multiple prescription narcotics" in David's truck, and that David's mother had reported that alcohol and prescription narcotics were involved. Am. Compl. ¶ 20, 23. However, the plaintiff does not allege that Faulkner or any of the other defendants were aware of the specific nature of the drugs found in David's truck or that he had consumed an amount large enough to put him at serious risk of harm. There is no indication that any of the defendants actually saw David swallow any drugs, and the plaintiff acknowledges that David did not "tell any of the officers what and how much medication he had taken or state whether he had mixed those medications with alcohol." Id. ¶ 37. Consequently, the allegations in the complaint do not support the conclusion that David's need for medical attention was sufficiently obvious, or that the defendants actually knew of and disregarded an excessive risk of serious harm. See, e.g., Johnson v. Bessemer, No. 17-13122, 2018 U.S. App. LEXIS 18660, at *10 (11th Cir. July 10, 2018) ("Johnson argues that Proctor suffered from a serious medical need because a lay person would recognize that someone who is non-responsive after consuming an unknown quantity of drugs requires medical treatment. That argument fails. Goodwin did suspect that Proctor had taken drugs before coming to the jail, and at some point she learned that Proctor had told other inmates that she had taken Xanax. But there is no evidence that Goodwin knew that Proctor had also taken methadone and cocaine, and she testified that she has no medical training and does not know the side effects of Xanax. And the 'Constitution does not require . . . [a] jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol.'") (quoting Burnette, 533 F.3d at 133); Sanders v. City of Dothan, 409 F. App'x 285, 289 (11th Cir. 2011) ("Even if [the arresting officer] was aware that Sanders had swallowed some amount of cocaine, there is no evidence that he was aware that Sanders had swallowed an amount large enough to put him at serious risk of harm."); Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001) ("Thus, it is not enough for

plaintiff to demonstrate a question of fact whether the police officers or sheriff's deputies should have known that Watkins had swallowed drugs. We find the evidence was not sufficient to lead a rational trier of fact to conclude that the officers or jailers knew Watkins needed medical attention for swallowing drugs."). For these reasons, Count II fails to state a claim for deliberate indifference.

### 2. **Qualified Immunity**

The defendants also argue that Count II is subject to dismissal on the basis of qualified immunity. The defense of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "In determining whether an officer is entitled to summary judgment on the basis of qualified immunity, courts engage in a two-pronged inquiry." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015). The first prong asks whether the facts alleged, when viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a federal right. Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "The second prong of the qualified immunity inquiry asks whether the right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." Id. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation marks, citations, and brackets omitted).

For the reasons set forth above, the court concludes that the plaintiff has not alleged facts sufficient to show that any of the defendants named in Count II violated David's constitutional

rights. However, even if the plaintiff could establish a constitutional violation, the court is convinced that such violation was not clearly established. As indicated above, courts have held that "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." Burnette, 533 F.3d at 1333. Likewise, it does not mandate "that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers." Grayson, 195 F.3d at 696; see also Estate of Abdel-Hak v. Dearborn, 872 F.2d 1023 (6th Cir. 1989) (unpublished table opinion) (rejecting as "meritless" the argument that "police had a duty to take all chemically impaired persons to the hospital"). Although pretrial detainees have a clearly established right to be free from deliberate indifference to a serious medical need, it cannot be said that "every reasonable official" would have understood, under the circumstances alleged, that the defendants' actions violated that right. Reichle, 566 U.S. at 664. Accordingly, the defendants named in Count II are entitled to qualified immunity.

### B. Count III

In Count III, the plaintiff alleges that Sprinkle, Dudding, and/or Parker had "final policy making authority regarding the screening and provision of medical care" at the jail, and that they "created a policy of deliberate indifference" by allowing inmates and detainees to be admitted without proper medical screening. Am. Compl. ¶¶ 81, 83. In his response to the defendants' motion to dismiss, the plaintiff emphasizes that all of the defendants, including Sprinkle, Dudding, and Parker, have been sued in their individual, rather than official, capacities.

As an initial matter, the court notes that the plaintiff's contention that Sprinkle, Dudding, and Parker are policymakers "does not quite capture the relevant issue here." Dawkins v. Arthur, 701 F. App'x 191, 193 (4th Cir. 2017). "Debating whether a public [official] has adopted an unconstitutional 'custom' or 'policy' is a question to be asked when examining the basis for

13

municipal liability under § 1983," and "is not the right question to ask when confronting a supervisor's potential liability in his individual capacity." Mikkelsen v. DeWitt, 141 F. App'x 88, 91 (4th Cir. 2005) (emphasis in original). Instead, "where the . . . claims are against a public official in [his] individual capacity, to hold the official liable for [a] subordinate's conduct, that 'conduct must meet the test for supervisory liability'" enunciated in Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). Dawkins, 701 F. App'x at 193 (quoting Mikkelsen, 141 F. App'x at 91); see also Shaw, 13 F.3d at 799 (setting forth "three elements necessary to establish supervisory liability under § 1983"). Nevertheless, in light of the court's conclusion that the facts alleged do not state a viable claim for deliberate indifference against the officers responsible for arresting and detaining David, it follows that the claim against Sprinkle, Dudding, and Parker must be dismissed. See Doe v. Rosa, 664 F. App'x 301, 304 (4th Cir. 2016) ("There can be no supervisory liability when there is no underlying violation of the Constitution.") (citing Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991)); see also Belcher, 898 F.2d at 36 ("Because it is clear that there was no constitutional violation we need not reach the question of whether a municipal policy was responsible for the officers' actions.").

## II. Claims under Virginia law

The court's conclusion that the amended complaint fails to state a claim for relief under § 1983 does not mean that all avenues of redress are unavailable. The plaintiff has also asserted a wrongful death claim against all nine defendants under Virginia Code § 8.01-50, based on tort theories such as negligence and gross negligence. In moving to dismiss this count, the defendants argue that they are "immune to claims of simple negligence," and that "Dudding and Parker did not owe Mays any duties related to setting or implementing policies" at the jail. Defs.' Br. in Supp. of Mot. to Dismiss 4, 10, Dkt. No. 30.

After considering the parties' arguments, the court believes that "the definition of legal duties under the law of tort is best left for the state courts to resolve," as is the issue of whether the doctrine of sovereign immunity protects the defendants from the plaintiff's claim of simple negligence. Safar v. Tingle, 859 F.3d 241, 251 (4th Cir. 2017). Accordingly, the court declines to exercise supplemental jurisdiction over the remaining claims and will dismiss them without prejudice to the plaintiff's right to advance them in state court. Id.; see also 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (emphasizing that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); Ryu v. Whitten, 684 F. App'x 308, 311–12 (4th Cir. 2017) (declining to exercise supplemental jurisdiction over the plaintiff's state law claims after concluding that there was no federal constitutional violation, and instructing the district court on remand to dismiss the state law claims without prejudice).

## Conclusion

For the reasons stated, the court will grant the defendants' motion with respect to the plaintiff's claims under 42 U.S.C. § 1983. While the court sympathizes with the plaintiff's loss, the court is unable to conclude that the amended complaint states a plausible claim of deliberate indifference against any of the named defendants. The remaining claims under state law will be dismissed without prejudice.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 16th day of November, 2018.

_____
Senior United States District Judge

15